UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| United States of America, | Case No. 2:21-cr-00224-CDS-VCF |
|---|---|
| Plaintiff, | |
| v. | **ORDER re ECF No. 31** |
| Jairo Garcia, | |
| Defendant. | |

Before the Court is Defendant Jairo Garcia's Motion to Reopen Detention Hearing at ECF No. 31. The Government opposed at ECF No. 35, and Defendant replied at ECF No. 36-1.

The Court relies on its findings made in open court for its rationale to grant the motion to re-open the detention hearing.[1] ECF No. 37.

The Court previously found that the Government had not met its burden to show by a preponderance of the evidence that no conditions could be fashioned to reasonably assure Mr. Garcia's appearance as required. ECF Nos. 11, 15. That has not changed. But the question the Court must now reconsider, given all the information now before it, is whether the Government has met its burden to show by clear and convincing evidence that no conditions can be fashioned to reasonably assure the safety of the community. The Court finds that, in light of the new and material information presented, the Government has not met its burden. As a result, the Court will grant Defendant's motion and will order that Mr. Garcia be released subject to conditions.

**I.   Legal Standard**

The Government bears "the burden throughout the proceeding to show by clear and convincing evidence that no condition or combination of conditions would reasonably assure . . .

---

[1] While the Court stated in open court that the degree to which Mr. Garcia resisted arrest in the instant offense (or whether he resisted at all) was material to the issue at hand, it failed to note the considerable weight it gave to that fact in its prior ruling. Specifically, while addressing the issue of danger at the initial detention hearing on February 23, 2022, the Court commented it was particularly significant that Mr. Garcia resisted arrest while armed and that it required two officers to take him down. ECF No. 11.

the safety of the community." *United States v. Moore*, 607 F. Supp. 489, 497 (N.D. Cal. 1985). "A [court's] finding that a defendant is a danger to any other person or the community must be supported by 'clear and convincing evidence.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing 18 U.S.C. § 3142(f)(2)(B)).

In deciding whether conditions could reasonably assure the safety of the community, the Court evaluates four factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "Doubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990).

**II.    Analysis**

Previously, the Court relied on several factors when determining that no conditions could be fashioned in this case to reasonably assure the safety of the community.

First, that the instant charge was the fifth offense related to the unlawful/unauthorized possession of a firearm. To this end, the Court noted the existence of a pattern in place.

Next, the Court relied on the history of obstructing police. Important to that factor, it specifically noted that in relation to the instant offense, Mr. Garcia was resisting arrest while armed and that it took two officers taking him down to the ground to handcuff him.

The Court also relied on the existence of prior probation violations and the fact that Mr. Garcia was on probation for a Battery with Substantial Bodily Harm conviction while the instant offense was allegedly committed.

Lastly, the Court made a comment that despite the time that elapsed between seeking the indictment and the date of offense, there was overwhelming evidence that no conditions could be fashioned in this case.

Reviewing the new information in context, the Court finds that conditions can be fashioned to reasonably assure the community's safety. *See United States v. Barksdale,* No. CR S-08-0263 FCD, 2008 WL 2620380, at n.3 (E.D. Cal. July 1, 2008) ("Once a hearing is reopened

1 . . . it is reopened for the purpose of the cour[t] receiving any information, within reason, not submitted at the original detention hearing. The purpose of such a rule is to allow the new information justifying reopening to be considered in context, taking into account information either side may have gathered.").

First, this would be the sixth—not fifth—offense related to the unlawful possession of firearms.[2] Mr. Garcia's criminal history is concerning. It is long and, while several of his convictions are misdemeanors, there are numerous firearms-related offenses. In this regard, the Court acknowledges the harm that Mr. Garcia has inflicted on another individual while in possession of a firearm. By the same token, it cannot ignore that he was placed on probation (despite his criminal history) and, as discussed below, not revoked after the commission of the alleged instant offense.

While the Court previously ascribed significant weight to the attending circumstances of the instant arrest, it can no longer conclude (based on the new and material information before it) that Mr. Garcia resisted arrest. In that same vein, while there are prior convictions for resisting arrest, those arrests were in 2013 and 2015.

The Court continues to rely on the number of arrests for violation of probation but also takes into account that these were all in connection with the Battery with Substantial Bodily Harm conviction and that he was reinstated each time, even after the instant alleged offense took place.[3]

Lastly, the Court continues to consider the fact that the instant offense was committed while on probation.

At the heart of the matter is the fact that Mr. Garcia was out in the community between August 2019 and the time that he was ultimately arrested for this offense (sometime in January 2022). That is more than two years. While the alleged offense was committed on December 24, 2020, the Government did not seek to indict Mr. Garcia until August 11, 2021—approximately 18 months after the commission of the instant offense. ECF No. 1. And the Government waited until

---

[2] The number of similar offenses above does not take into account the 2011 arrest for carrying a concealed weapon for which the Court does not have any disposition other than "remanded."

[3] The Court understands that the State of Nevada is now seeking to revoke probation in that case.

1  February 2022 (another six months) to arrest him. While the Government explained that the delay
2  in indicting him resulted from not knowing which jurisdiction would pursue charges and whether
3  revocation proceedings would be sought, the delay in question consists of 18 months. And the
4  court is pressed to believe it takes the Government 18 months in a simple felon-in-possession case
5  to perform its due diligence and determine whether the case will be brought in federal court.

6        The Government itself acknowledges the problem posed by the delay in seeking to indict
7  Mr. Garcia as it relates to the notion that no conditions of release can be fashioned. Specifically,
8  the Government maintained that it would have a different position regarding detention if Mr.
9  Garcia had done well after he was reinstated to probation. But the reinstatement took place in
10 April 2021, and the only thing the Government relies on since his reinstatement to suggest that no
11 conditions can be fashioned is the conduct that concluded with Mr. Garcia's hospitalization,
12 which was around January 2022. While the Government stresses that he was not performing well
13 on probation because he was drinking past his curfew with a known felon and gang member,[4] the
14 Court cannot ignore that a much more serious violation took place on December 2020 when he
15 was found to be in possession of a firearm and that he was not revoked from probation.

16       Based on the new and material information provided, the court finds that the Government
17 has not met its burden to show by clear and convincing evidence that no conditions of release can
18 be fashioned in this case to reasonably assure the safety of the community. As a result, the Court
19 orders that Mr. Garcia will be released subject to the conditions identified below.

20 **III.     Conclusion and Order**

21       **IT IS ORDERED** that Defendant's Motion to Reopen Detention Hearing (at ECF No. 31)
22 is GRANTED.

23       **IT IS FURTHER ORDERED** that Defendant Jairo Garcia must be released subject to
24 the following conditions:

25       • The Defendant shall sign the bond release documents within 24 hours of release.

26 ─────────────────
27 [4] Given the little information the Court has regarding the surrounding circumstances that resulted in Mr. Garcia being hospitalized for shotgun wounds (and ultimately arrested and brought to federal
28 court), it does not draw any negative inferences from it other than the notion that he may have been in violation of the terms of his probation.

- The Defendant shall report to U.S. Pretrial Services for supervision.
- The Defendant shall abide by all conditions of release of any current term of parole, probation, or supervised release.
- The Defendant shall abide by the following restrictions on personal association, place of abode, or travel:
  Travel is restricted to Clark County, NV.
- The Defendant shall maintain residence at a halfway house until the defendant finds appropriate housing as approved by Pretrial Services.
- The Defendant shall pay all or part of the costs for residing at the halfway house or community corrections center based upon his/her ability to pay as Pretrial Services or the supervising officer determines.
- The Defendant shall maintain or actively seek lawful and verifiable employment and notify Pretrial Services or the supervising officer prior to any change.
- The Defendant shall avoid all contact directly or indirectly with any known gang members and associates.
- The Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapons.
- Except as authorized by court order, the Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed by a licensed medical practitioner. Except as authorized by court order, the defendant shall not possess, use or sell marijuana or any marijuana derivative (including THC) in any form (including edibles) or for any purpose (including medical purposes).
- The Defendant shall submit to any testing required by Pretrial Services or the supervising officer to determine whether the defendant is using a prohibited substance. Any testing may be used with random frequency and may include urine testing, a remote alcohol testing system and/or any form of prohibited substance screening or testing. The defendant shall refrain from obstructing or attempting to

    obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or monitoring which is/are required as a condition of release.

- The Defendant shall pay all or part of the cost of the testing program based upon his/her ability to pay as Pretrial Services or the supervising officer determines.
- The Defendant shall not be in the presence of anyone using or possessing a narcotic drug or other controlled substances.
- The Defendant shall participate in a program of inpatient or outpatient substance use therapy and counseling if Pretrial Services or the supervising officer considers it advisable.
- The Defendant shall pay all or part of the cost of the substance use treatment program or evaluation based upon his/her ability to pay as determined by Pretrial Services or the supervising officer.
- The Defendant shall submit to a mental health evaluation as directed by Pretrial Services or the supervising officer.
- The Defendant shall participate in mental health treatment as directed by Pretrial Services or the supervising officer.
- The Defendant shall pay all or part of the cost of the medical or psychiatric treatment program or evaluation based upon his/her ability to pay as determined by Pretrial Services or the supervising officer.
- The Defendant shall participate in the following location monitoring program component and abide by its requirements as Pretrial Services or the supervising officer instructs.
- Home Detention: The Defendant is restricted to his/her residence at all times except for employment; education; religious services; medical, substance use or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities preapproved by Pretrial Services or the supervising officer.

1     • The Defendant shall not tamper with, damage, or remove the monitoring device
2         and shall charge the said equipment according to the instructions provided by
3         Pretrial Services or the supervising officer.
4     • The Defendant shall pay all or part of the cost of the location monitoring program
5         based upon his/her ability to pay as determined by Pretrial Services or the
6         supervising officer.

DATED: May 11, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE