# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>JAIRO GARCIA,<br><br>                    Defendant. | 2:21-cr-00224-CDS-VCF-1<br><br>**Report and Recommendation**<br><br>MOTION TO SUPPRESS [ECF NO. 27] |

Defendant Jairo Garcia filed a motion to suppress. ECF No. 27. On, June 14, 2022, I held an evidentiary hearing on the motion. ECF No. 60. The parties filed supplemental briefing after the evidentiary hearing. ECF Nos. 62, 65, and 66. I recommend that the motion to suppress be denied. ECF No. 27.

**I.  Background**

On December 24, 2020, the government charged defendant Jairo Garcia with being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Officers initially arrived at the scene of arrest, 3100 East Carey Avenue, in response to two 9-1-1 calls. ECF No. 61 at 27 and 62. One of the calls placed from Unit 4 of the complex was disconnected. *Id.* at 27 and 64. In the other call, a man requested police response to a domestic disturbance. *Id.* at 27 and 64. The caller stated that his 23-year-old niece allegedly threw a can at his head in Unit 3 of the complex. *Id.* at 27, 62, and 138. The officers testified at the evidentiary hearing that they are trained to understand calls involving domestic disputes can "…quickly and easily take a twist and how deadly it could be." *Id.* at 119.

The first officer on scene was Officer Colwell. *Id.* at 31. Officer Colwell parked eastbound on the north side of Carey a few buildings west of 3010. *Id.* at 32. Moments later, Officer Macias arrived. *Id.* at 33. Officer Macias parked west bound on the south side of Carey east of 3010. *Id.* The officers arrived in separate patrol cars and were wearing uniforms. *Id.* at 30-31, 33, 70, and 122. Upon arrival, the officers heard arguing coming from the courtyard of the fourplex. *Id.* at 44 and 61. At the evidentiary hearing, Officer Colwell testified he "heard a lot of arguing coming from the courtyard." *Id.* at 35-36. Officer Colwell could not, however, "tell who was arguing with whom" when he arrived. *Id.* at 36. As the officers approached, they saw defendant Garcia outside the complex carrying a toddler. *Id.* at 39. The officers testified in the evidentiary hearing that sometimes people involved in domestic disputes will use child as a shield from officers. *Id.* at 42. Upon seeing officer Colwell, defendant began to walk away from him heading east on the north side of Carey. *Id.* at 39 and 53. When Officer Macias came into view, Garcia changed direction and went back into the 3100 East Carey courtyard. *Id.*

Officer Colwell asked defendant Garcia what unit he lived in. *Id.* at 68 and 89. Garcia answered that he did not live there and continued walking away at a fast pace towards one of the apartments. *Id.* at 47; 89; 102. Officer Colwell asked defendant Garcia to turn around, but he continued walking away. *Id.* at 47. The officers followed Garcia. *Id.* at 54. Officer Colwell testified that he was trying to stop Garcia

"…just to see if he was involved…" in the domestic disturbance. *Id.* at 67. The officer's intention was "…to briefly detain [Garcia] to find out if he [was] part of the domestic violence call," *Id.* at 46, and "to discuss the domestic disturbance." *Id.* at 132.

After being pursued by the officers into the courtyard, Garcia put the child he had been holding down. *Id.* at 55. The officers grabbed Garcia, and Officer Macias performed a "displacement technique," causing Garcia to fall forward. *Id.* at 94. The Officers struggled to handcuff Garcia and told him to stop resisting. *Id.* at 50. After a 20 to 30 second struggle with Garcia, the officers handcuffed him. *Id.* at 49. When Officers Colwell and Macias patted Garcia down, they found a gun in his pants waist. *Id*. Officers put Garcia in the patrol car. *Id*.

Garcia argues that the officers violated his Fourth Amendment rights, and the firearm must be suppressed. ECF 62 at 3-4. Garcia argues this conclusion on four grounds. Garcia alleges his detention was an arrest, and the officers did not have probable cause to arrest him. ECF 62 at 3. Garcia claims the detention was an arrest because a reasonable person in his position would not have believed he "…would be free to leave after a brief questioning…" ECF 62 at 8.

Garcia also argues that the officers did not have reasonable suspicion even for a temporary detention. ECF 62 at 3-4. Garcia claims that the officers did not have probable cause or reasonable suspicion for a temporary detention because the officers were "…responding to a call where a 23-year-old white woman threw a can at her uncle's head…" not for an incident involving a person matching the defendant's description. ECF 62 at 9. Defendant alleges that the government's focus on the nature of domestic disturbances is misplaced as there was no indication that he was the perpetrator of the violence. ECF 62 at 10. The government must instead show "…the officers had probable cause or reasonable suspicion to believe Mr. Garcia committed an offense." *Id*.

Garcia also alleges the officer's frisk was unreasonable and the officers were not justified in their

3

intrusive tactics. ECF No. 62 at 4. Garcia alleges the frisk was unreasonable because as there was "…no evidence demonstrating the officers believed Mr. Garcia was armed and dangerous." ECF No. at 12. Garcia relates this back to the fact that he did not match the description of the perpetrator of the domestic disturbance. *Id*. Garcia alleges the weapon frisk was unconstitutional as the weapon described in the 9-1-1 call was not a concealed weapon on a man, but rather a tin can. ECF No. at 13. Garcia adds that, even though he was walking away from the officers, "…the record contains no indication he was threatening towards officers or made furtive movements suggestive of a concealed weapon." ECF No. at 13. And there is no record of the officers observing any bulging in his clothes. *Id*.

The government argues that contrary to defendant's argument, the officers' search of defendant's person did not result from a Terry stop but rather took place after an arrest for an independent criminal act. ECF No. 65 at 8. The government argues that the defendant has not distinguished between the officers' reasonable suspicion to temporarily detain defendant in the investigation into the domestic dispute call and the officers' subsequent probable cause to arrest defendant after he committed a separate and distinct crime of resisting or obstructing a public officer. *Id.* The government argues that the officers searched him incident to that arrest and then found the firearm in his waistband. *Id.* The government argues that the firearm is thus admissible at trial. *Id.*

Garcia argues in the reply brief that the officers arrested him at the outset of the encounter, which required probable cause. ECF No. 66 at 2. Garcia also argues that the officers did not reasonably suspect him of a criminal offense, precluding even a temporary detention. *Id.* Garcia argues that the police needed to suspect that he particularly had committed a criminal offense. *Id.* Garcia also argues that he had a right to resist an illegal detention. *Id.* Garcia also argues that Officer Colwell's testimony is contradicted by the body camera evidence, which makes his testimony unreliable. *Id.*

//

4

//

## II. Discussion

**A.  Analysis regarding whether the detention of Garcia was an arrest and whether officers had probable cause to arrest Garcia.**

The Fourth Amendment confers the right for people to "be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…but upon probable cause…" U.S. Const. amend. IV. The Fourth Amendment was intended to protect against arbitrary arrests *Giordenello v. United States*, 357 U.S. 480, 485–86 (1958).

There is "no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). "Rather, courts must consider the totality of the circumstances, evaluating both the intrusiveness of the stop as well as the justification for the use of such tactics…" *Id*. Whether a stop is a detention or an arrest "depends upon the objective circumstances of the situation, or whether a reasonable person in such circumstances would conclude that after brief questioning, he or she would not be free to leave." *United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002) (internal quotations and citations omitted). While using handcuffs are not part of an ordinary *Terry* stop, courts will "'…allow intrusive and aggressive police conduct without deeming it an arrest ... when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" *Id*. (citing *Washington v.* Lambert,*98* F. 3d 1181, 1186 (9th Cir.1996)).

I watched the body cam footage during the evidentiary hearing. I find that as Officer Colwell approached the 3010 E. Carey, he observed Garcia at the front courtyard gate of the subject building carrying a young child. They locked eyes.  Garcia then turned east, walking away form Officer Colwell. Officer Colwell asked Garcia to stop so he could ask him questions about the 911 calls.

Garcia did not comply, but when he saw Officer Macias approaching from the east, Garcia

5

turned around and walked back into the courtyard. Without stopping, Garcia proceeded toward unit 1 of 3010 E. Carey.

Officer Colwell blocked Garcia from advancing toward unit 1. Officer Colwell's intent was to detain Garcia to ask him questions about the domestic violence call and to secure the safety of the officers and civilians in the area, including the child Garcia was carrying. Danger to officer and civilians is always a concern during domestic violence calls. A struggle ensued. Garcia was handcuffed and arrested for resisting arrest.

I find that the police had reasonable suspicion to temporarily detain Garcia based on the totality of the circumstances to determine whether he was involved in a domestic violence dispute. Officer Colwell credibly testified that based on his experience of responding to domestic violence calls, especially around holidays (this arrest happened on Christmas Eve), that family gatherings often prompt more individuals to get involved in the dispute. ECF No. 61 at 26. The body cam footage I watched at the hearing supports Officer Colwell's testimony. The officers were justified in conducting a brief investigatory stop to determine whether defendant was involved in a domestic violence event. Garcia refused to stop and walked toward an open apartment, which raised serious safety concerns. *Id.* at 47-48, 203. Garcia physically resisted the officers and subjected himself to arrest for a new and independent crime.

Once defendant forcefully resisted the officers in their attempts to temporarily detain him, he committed a new criminal offense of resisting or obstructing a public officer. See NRS 199.280.8 Defendant committed this crime in the officers' presence, and thus the officers had probable cause to arrest defendant for the new criminal offense. See NRS 171.124;9 171.136. Following defendant's arrest for this new offense, the officers brought him to their patrol car and conducted a lawful search incident to arrest whereupon they found the firearm in defendant's waistband. See, *Illinois v. LaFayetter*, 462

6

U.S. 640, 645 (1983) (search of a person incident to a lawful arrest is policy-justified and "requires no additional justification."). I watched these events in the body cam footage at the evidentiary hearing, and I find that the officers had probable cause to arrest the defendant for this new offense.

### B. Analysis regarding whether Officers had reasonable suspicion for a *Terry* Stop and the alleged unreasonableness of the Officer's search of Garcia.

Under NRS § 171. 123(1), "Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime." For "'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.'" *Terry v. Ohio*, 392 U.S. 1,9 (1968). (citing *Elkins v. United States*, 364 U.S. 206, 222 (1960).

In *Terry*, the Supreme Court stated "…a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22(1968). An officer "…can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation omitted). The inquiry into the reasonableness of a search and seizure is two parted, first the court investigates "…whether the officer's action was justified at its inception, and [second] whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968).

There is "no ready test for determining reasonableness other than by balanci*n*g the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534—535, 536—537 (1967)). "…[I]n

justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*

The scope of the search and seizure "…must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio*, 392 U.S. 1, 19 (1968) (citing *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652 (1967)). Generally, "[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons." *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001). However, intrusive and aggressive police conduct may occur in a *Terry* stop, to persevere officer safety. *Id*. (citing *Washington v.* Lambert,*98* F. 3d 1181, 1186 (9th Cir.1996)).

"During the course of a lawful patdown, if an officer feels an item that he recognizes as contraband or evidence, that 'touch' may provide probable cause for the arrest of the person and seizure of the evidence." *Id* at 1013. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993).

Officers Colwell and Macias were responding to a domestic disturbance that included (1) a 9-1-1 call alleging a domestic battery and (2) a subsequent 9-1-1 call from the same fourplex that was disconnected. Officer Colwell and Macias were performing a legitimate investigative function when they approached Garcia for the purpose of investigating possibly criminal behavior. The officers testified that based on their training and experiences they understand calls involving domestic disputes can "…quickly and easily take a twist and how deadly it could be." The officers testified that as they approached the fourplex, they heard raised voices coming from the courtyard. Garcia was one of the

parties involved in the commotion. When Garcia saw the officers approaching, he first tried to leave the courtyard and then changed directions back into the courtyard and towards one of the apartments. The apartment door was open. At the time, Garcia was holding a toddler. The officers testified that sometimes people involved in illegal activity will use children as a shield from officers. Garcia's presence at the scene of the domestic disturbance, and his presence in the courtyard where the officers could hear arguing coming from, coupled with Garcia avoiding the officers and quickly walking toward the apartment, justified the officers' decision to call him back to determine whether he was involved in or had information about the domestic disturbance. Considering the totality of the circumstances, the officers had reasonable suspicion to briefly detain Garcia to question him regarding the domestic violence incident.

The circumstances surrounding the stop began to escalate as Garcia kept walking away from the officers. Officer Colwell testified at trial that he became concerned that Garcia would go into the apartment and have access to "items that can be used as a weapon against officers." ECF No. 61 at 48. As the situation became more contentious, Officer Colwell decided to handcuff Garcia. Officers Colwell and Macias spent 20-30 seconds trying to handcuff Garcia. The officers both testified that Garcia was actively resisting them by pushing on and pulling away from the officers. The body-cam footage corroborated their testimony. After detaining Garcia, the officers found the firearm in his waistband during a pat down. Considering the totality of the circumstances, the scope of the officer's stop was not unreasonable.

### 1. Whether the firearm should be excluded from evidence

To enforce the Fourth Amendment, the United States Supreme Court created the exclusionary rule as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011). Under normal

circumstances, law enforcement must procure a search warrant before they are able to legally invade the privacy of another. *Steele v. United States*, 267 U.S. 498 (1925). However, the rule "…excluding evidence seized in violation of the Fourth Amendment…" "…has its limitations… as a tool of judicial control." *Terry v. Ohio*, 392 U.S. 1, 13 (1968). The exclusionary rule cannot be "…invoked to exclude the products of legitimate police investigative techniques on the ground that much conduct which is closely similar involves unwarranted intrusions upon constitutional protections." *Id*.

The officers had probable cause to arrest the defendant for the new offense of obstruction and resisting arrest, and then they found the gun in defendant's waistband during a lawful search incident to arrest. Looking at the totality of the circumstances, the police also had reasonable suspicion to briefly detain Garcia to question him as part of their investigation into the domestic violence calls. He was near the scene and in the courtyard where people were arguing. A pat down would have been reasonable for officer safety, even if Garcia had not resisted or obstructed the officer. I recommend that the firearm should not be excluded from evidence.

ACCORDINGLY,

I RECOMMEND that defendant Jairo Garcia's motion to suppress (ECF No. 27) be DENIED.

DATED this 15th day of August 2022.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE